Council, before you begin, just a couple of reminders. First of all, you have 20 minutes for the appellant, with an additional 5 minutes for rebuttal, 20 minutes for the appellee. Second of all, please keep your voices up. These microphones record, but they do not amplify. Whenever you're ready, the appellant may begin. Good morning. May it please the Court, my name is Tiffany Boy Green and I represent Rayvon Wilson in this matter. Mr. Wilson filed a successive post-conviction petition in which he raises a culpable claim of actual innocence based on newly discovered evidence that he acted in self-defense. In 2010, Mr. Wilson entered a guilty plea to the offense of first-degree murder in exchange for the state's agreement to ask for a life sentence instead of the death penalty. At that time, when he entered his guilty plea, the factual basis stated that, if called to testify, Harry Wilson would state that at a family gathering, he saw Rayvon Wilson walk up to Reginald Bradley, pull out a gun, and shoot Bradley in the chest multiple times. However, in 2008, Harry Wilson recanted that statement and provided an affidavit to Mr. Wilson.  2018. He provided an affidavit recanting that previous statement and in the affidavit he states that Bradley actually was the one that had a gun on him. He brought the gun in the car with him to Chicago and then with him to this family gathering. That Wilson and Bradley began an argument and during the course of this argument, Bradley, not Wilson, pulled out a weapon. So does the entire petition depend on Harry Wilson? Because he, I think you have the strongest argument, could not have been discovered earlier. He would have switched in position. But all these other people, the three other people, including the barber across the street, don't you have to make a showing of due diligence as to them? Correct. With respect to McClinton, who was the barber across the street, he was indoors at the time of this offense and it's not exactly clear where the two were in relation to each other. It seems that Wilson and Bradley, as they argued, walked down several houses. He didn't want to come forward at an earlier time because he didn't want to get involved with this family feud and there's no indication that Wilson would have seen him or had any idea that he was observing this from the barber shop. So it's a situation where in the affidavit, Wilson also states in his affidavit that he gave his defense attorney names of certain witnesses and it wasn't any of these witnesses. So I think it's safe to assume that he did not realize that the barber saw what was going on and that there was this fight. And it's a little hard to measure due diligence because there was no trial here, so nobody ever was getting ready for trial here. But how do we measure due diligence, and the burden is on your client to show due diligence. Correct. How do we measure it, you know, in a guilty plea situation and how do we measure it where there's many witnesses who saw this whole altercation and they're family members. They're known people. I mean, the entire family is there. Well, I think this would be a bit different with respect to the barber if he had been at the family gathering. But he was just indoors down the street in his business through the normal course of events and there's no indication that Wilson knew he was there. It's different than a situation where he was sitting next to him and he knew that he saw that. So you're relying particularly on the barber and Wilson because the other two witnesses say nothing about whether they were ever approached or how long they've known what they know. They say nothing. That is correct. They say nothing. So the primary affidavits that are relevant here are certainly Harry Wilson since he was the one that provided the factual basis at the time of the guilty plea. It was his testimony and his statements to the police that led to that factual basis. And he had a very legitimate reason. He thought he could be held guilty under a theory of accountability because he drove Bradley to Chicago and to the family gathering. So he was not willing to recant those statements until 2018. And no amount of due diligence could have convinced him to testify otherwise. With respect to McClinton, I think that he certainly, because he wasn't there, there's definitely an argument that Wilson could not have discovered him with due diligence because of the fact that he was not visible and was indoors and not a part of the family gathering. So if you look at the standard... Do you think there's anything that makes him particularly material as a witness, that he wasn't a family member, that he's a neutral person as opposed to... That definitely would go to credibility, which is something for a different stage at this point. No, no, but at this point you have to show that the newly discovered evidence is material. Correct. And the state concedes it's material and non-cumulative and it's brief. So those two things are not an issue here. What is the newly discovered aspect of the evidence as well as the conclusive evidence. And I'm not sure I understand the difference between material and conclusive character. Material seems something along the road to conclusive character. Correct. I believe Robinson defines it as relative and probative of Petitioner's innocence. And it is relative and probative, certainly. And it's non-cumulative in that it adds to what the trier of fact already heard in this case. And then... There was a guilty plea. Yeah, it was the judge accepting the guilty plea and entering judgment on that. With respect to conclusive, Robinson states, as this court did in Griffin, that it raises the probability that Petitioner would be acquitted on retrial. It places the evidence in a different light and undermines confidence in the court's verdict or entry of judgment on the guilty plea in this case. It does not need to be conclusive. It simply needs to raise the probability of acquittal if this case went to trial. And here it absolutely does. This is an entirely different factual scenario than what was entered at the guilty plea stage. Robinson, according to Harry Wilson, according to Harry Wilson, Wilson apparently just walked up to Bradley, pulled out a gun, shot him multiple times, and fled. And that is not what happened. According to all of these witnesses in the affidavits, all four of them provide a similar account. But we will focus, as we just discussed, on Harry Wilson and on the barber. But Mr. Wilson is asserting his self-defense. Now. He was asserting his self-defense. Correct. After the plea. Correct. After the direct appeal. Now asserting his self-defense. And now he's saying this is new evidence. These are new facts. But he knew this. To assert his self-defense, he knew that he was, if this is to be believed, that he was defending himself at the time they entered the plea. Well, at this stage of proceedings, this court needs to take the allegations as true. And, of course, he knew that he had acted in self-defense, but he also, as the court recognized in Reed, there are many instances where a defendant will enter a guilty plea regardless of innocence or guilt. And in this case, he was facing the death penalty. So he was motivated to enter a guilty plea. He couldn't change what Harry Wilson would have testified to. Harry Wilson was sticking to the statements he told the police that completely exculpated him from any liability which he was concerned of. Counsel, there were quite a few other people that were present as well. Why couldn't we have gotten this evidence from any of those other people who witnessed the altercation? I think because he entered a guilty plea, there wasn't the chance to develop the record at the same extent as there would have been had it gone to trial. But regardless, at this point, we just need to see, well, here's what we knew at the time of the guilty plea. The court took judicial notice of a deposition as well that had been taken before Bradley's death. And there simply wasn't the chance to develop the record. The defense attorney seemed very focused on avoiding the death penalty, which is a legitimate strategy. There's no indication that these witnesses were even contacted by the police. It's just not in the record. So presumably, should this case go forward to second stage where he would have an attorney, and then third stage where there would be an actual hearing, more of these witnesses could come forward if they were located by defense counsel and present a more accurate account of what actually happened to the court. So I do want to stress that at this first stage of proceedings, we need to focus on the truth of the – which could be decided at second and third stages of proceedings. And here there certainly are. There are plenty – there are at least four witnesses, and I do understand that two of them did not state why they didn't come forward sooner. That could be something that counsel could investigate at additional proceedings if he had an attorney appointed for him. But it seems that the true facts of what transpired here were not presented at the time of the guilty plea. And it does call into question the factual correctness of the judgment entered on those facts. So for those reasons, we would ask that this Court reverse the denial. Before you stop, because you sound like you're winding down here. I'm happy to answer any questions. The appellate – at appellate court decision in Griffin, are you aware of the Illinois Supreme Court decision in Griffin? Yes. Yes. This Court's reasoning with respect to the actual innocence claim was affirmed by the Illinois Supreme Court.  Roline and Robinson. And making clear that the Robinson standard applies even on the guilty plea.  At the leave to file stage. Right. The standard is exactly the same as this Court found in Griffin. That it is Robinson that applies. Later on, if the case progresses, that's when the standard and rate would be applied. Anything else?  Thank you. Okay, thank you. We'll see you again.  Good morning, Your Honors, and may it please the Court. I am Assistant State's Attorney Zach Van Dine, appearing on behalf of the people of the State of Illinois. So today, I would summarize my main points up front as follows. First, none of Petitioner's attached affidavits is newly discovered. Not one of them adequately alleges why testimony about the contentions therein would have been unavailable, either literally or effectively, to Petitioner at the time of his plea. And second, all of Petitioner's affidavits lack conclusive character because even when you take their well-fled facts as true, they still provide no basis for finding whether Petitioner had become the aggressor at the time the victim was shot, or whether Petitioner shooting the victim was necessary to avert an imminent danger of harm. And therefore, there are no facts stated within these affidavits that allow, conceivably allow, for a finding that all the essential elements of self-defense have been presented. So certainly, Mr. Wilson's not newly discovered. Certainly, family members wouldn't be newly discovered. But why is the barber? I feel we shouldn't be calling him the barber. But Mr. McClendon, why is Mr. McClendon not newly discovered? Well, I think if you look at who he says he is and where he says he's been, which is a fixture at that exact location across the street at all relevant times, you know, in 2004 right up to 2018 when this affidavit was filed, he doesn't, he never claims that he made himself unavailable. He doesn't claim to have moved or been absent in any way. I think on the contrary, you'll find that, you know, he states that he is a family friend of the entire Wilson family. So Petitioner Harry, presumably Harry Wilson, that was at that family gathering, he is able to identify all the relevant characters here on site according to his affidavit. And he is apparently so plugged in that he states that he, there was a shooting earlier in the family and he knew about it before, according to the factual basis, before anyone else, before Reginald, the victim, even knew about it. So is it your position that there, and I don't know, is it your position that the burden to show newly discovered would be, even in the context of a guilty plea, that a full investigation in preparation for trial would have uncovered that someone across the street had seen the occurrence? And is there a law that says that? Yes, and I think the law there is about the law of due diligence. Importantly, there's no contention in the affidavit from Arnold McClinton himself. There's also no contention from Petitioner that he met with him. He doesn't explain how or when he came to know of McClinton's involvement. There's no explanation. There's not even a claim that McClinton was previously unavailable to him, which I think is pretty damning. And then independently, if you look at it, the profile of McClinton that he presents based on those characteristics, I think the question is, would it be unfair to expect someone in Petitioner's position to discover this person, this person who's been a constant throughout this case? I mean, most of the due diligence cases do rest on a witness that you're aware of, but did you make an effort to get them to testify? This is a witness you're not aware of. What is the due diligence case that you rely on that says you have an obligation to make yourself aware of a witness that you're not aware of? Well, I think it comes in the form of Robinson, and I would also point to people like Wingate that helps distinguish Ortiz, which the Petitioner relies on heavily in his brief, and that in Ortiz, there was a fact that was claimed that the Petitioner had essentially made himself unavailable because he had moved to Wisconsin shortly after the murder. There was also a fear of gang retaliation in that case, whereas here, McClinton and Harry Wilson, for that matter, they only claim a vague not being willing and changing your mind about how you feel about whether you want to. Just following up on that and Justice Smith's question, if there's a trial, sure, there's diligence that needs to be done to find the witnesses to support your theory, Mr. Wilson's theory of self-defense. What is the difference of the diligence that needs to be done in a plea? Is there a difference that you'd say? I'm not sure that there is a difference in the plea. I don't think it's a tougher standard as opposed to if it had been a trial, tougher on Petitioner. But I do think that there has to be some explanation of how he got back in touch with McClinton, and how he came to know that he was present. Council mentions that McClinton was indoors, but clearly he was through a glass window where he could identify every single character. He can identify Petitioner and Harry and all these other family members on site. Wouldn't that come further down the line? At this point, it's just leave the file. Yes, so improving... A colorable claim. Yes, so improving it, but I think the reason it's not still colorable is because he doesn't even, there's no contention here that, you know, why, there's no explanation. There's not even a quantum of a claim of how and why McClinton was not available. Petitioner never states even in his own supporting affidavit that, you know, like, oh, I got back in touch with McClinton down the road. You know, there's no explanation right up until the filing of this affidavit in 2018, which I think is a common theme. Well, let's take a look at Harry Wilson. How would the defendant have known that he was going to change his testimony? He was a state's witness. So how would he have known that? Well, I think, I'm not sure he could have known definitively, but, you know, Petitioner... So then isn't it newly discovered? No, it's not because there is, you know, Petitioner does refer to a meeting that his counsel and him had had with Harry, but he doesn't mention, he doesn't claim, importantly, that in that meeting they discussed a, you know, what Harry's position might be at trial. I think, on the contrary, he says that my plea counsel at the time was only concerned with securing a guilty plea and was not concerned with self-defense. So it doesn't look like there was any testing of the waters of whether Harry would testify for or against. Well, I mean, are you suggesting that a criminal defendant can try to talk a state's witness out of their testimony or do something to try to persuade somebody who's been presented to them as the state's proper witness to change their testimony? Well, I don't know if there's ever any indication of when Harry even formed a position, so certainly I'm saying he needs to... I mean, what are you suggesting he should have done? He showed due diligence to change the state's proper witness, state witness, who's going to be their only live proper. What could he have done and should he have done? I mean, he doesn't claim that he even asked him what side... To change his testimony, probably not a good idea. Well, it wasn't a change at that point. There was no indication. He says that they talked, but he doesn't even say what they talked about. So I don't even think he could be changing back the other way. I'm not sure, but there's not even a contention. You know, I think in cases like people at the Edwards where, at the Supreme Court where, you know, you have two affiants that come later and they say, you know, I talked with the petitioner's plea counsel and he tried to talk me into, you know, testifying on his behalf at the time of trial, and they both said, you know, we didn't want to do that. They were in that case actually ultimately found not newly discovered because there was no claim. There's nothing on the record and no claim. They have evidence that they were ever subpoenaed. There is a, there has to be a showing that, you know, you did something, you tried something. I think that's the core theme of all of these affidavits is that there's no, these witnesses just kind of appear, which would be fine if they would have said, you know, well, that was because I got in contact with them. That was because I, you know, even. Maybe they had a guilty conscience. Well, I think. That happens. It certainly does. I think, you know, under cases like Wingate and there's a Smith case where the dissent cites Wingate and says that, you know, the, a witness is not unavailable just because they didn't want to, they didn't want to cooperate with the defense. There has to be, the due diligence is just as much of a requirement. You know, I think if you, there has to be a showing that because of that disinclination to cooperate and testify on behalf of the defendant that, you know, he couldn't be talked out of it. And there's no, there's no claim here that, you know, they even had that discussion. We don't even need to get into, you know, whether they definitively hashed out, you know, what his, what his position would be at trial. And, you know, the people are aware that, you know, there can be stipulated testimony as part of a factual basis of a plea in which, you know, there was a little to no contact of, of the speaker. You know, if the defense counsel, the plea counsel wants to say it, I talk to them and they say, I'll agree to that. And the people, of course, agree to that as well. Then, you know, that's all it takes. That doesn't necessarily say anything about the contact that was made before. And that's why I think what's dispositive here is that there's not even a, I don't want to repeat myself, but just there's not a statement, there's no allegation or facts to indicate that that was ever attempted. And just so we're clear, the entire record at this point, the factual record is based on the, Mr. Wilson's self-represented, self-written petition, right? He hasn't had counsel at the trial stage. He hasn't, all the affidavits that have been presented are presented by him. He's representing himself, correct? I'm not sure if I'm understanding. You're saying that up to 2018? I'm saying the factual record on which this post-conviction petition is being considered was created by a self-represented defendant. He hasn't had a lawyer. He had a lawyer, he had plea counsel. No, on a post-conviction. Counsel, you understand what I'm saying. All this factual support that you're suggesting is needed to show that he was duly diligent in discovering this new evidence. He's created the record himself. He's not had any lawyer help yet to create the record of his due diligence, correct? There was an unspecified period in between when plea counsel was through and when post-conviction counsel was appointed. And so there is, of course, case law saying that we can't hold it against incarcerated petitioners given what they have. We have to reflect their more limited resources. But there is still years. So post-conviction counsel has been appointed? What are you saying? Are you referring to the State Appellate Defender as post-conviction counsel? Well, there's the shaping period of when the post-conviction counsel comes on and shapes the claims into a proper form for post-conviction proceedings. And so I think at the time, at all relevant times, he has been appointed. No. He's filed a motion to file a successive petition. That's the procedural position we're in, correct? Yes. And he filed that pro se, correct? It was actually pro se, yes. And it's all been pro se, except on appeal where the appellate defender is stuck with the record as he created it, unless I'm missing something. No, I wouldn't disagree with that. Okay. That's all. Maybe move on to, well, first let me make clear, because you did not re-raise, which you raised in your brief, the forfeiture argument. You're not proceeding on that? That you somehow forfeited this? Well, I think, you know, I wanted to be careful, because I think while there's technically not, I think it may be most accurate to say there's technically not a procedural bar, but we end up in the same place here, because, you know, the law would say that you can't bring an actual innocence claim without, unless it's based on newly discovered evidence. So because our position is that it's not based on newly discovered evidence, then of course, you know, we would say that this claim can't be considered. But I believe it's more accurate to just call that not a, it's essentially a substantive discussion. It's not a before the fact procedural bar that, you know, our position is that he should never have been allowed to bring this claim. Okay. Let's talk for a second, if we could, about facts versus evidence, because you cite Jared, and then you asked to cite a supplemental authority, Walker, for the proposition that it has to be not just newly discovered evidence in support of a fact, but it has to be a newly discovered fact. Yes. I mean, I think the, the claim, the court's actual allegations here, you know, are that a gun was pulled by the victim first. That's a fact that has always been known to defendant since, you know, the outset, let alone since the time of plea. And so, like, there's case law that suggests that, you know, much like defendants own whereabouts, where there are cases where the defendant, the petitioner, brings affiance who say, oh, I was with petitioner at the time of the crime. And the courts will resoundingly say, you know, well, that's a fact that's been known to you since the beginning. How can that be right? That's always going to be true. The defendant always knows of their own innocence. Always. Whether it's an alibi or self-defense or I wasn't there or, the defendant always knows. So how, how could there ever be a claim of newly discovered evidence? The facts are always known to the defendant. The claim has to rest on a newly discovered fact. Yeah, and I think that, I think it's fair, I think, because the law is murky there. You know, the people maintain that this is that kind of fact. But I think, frankly, our stronger argument is that, you know, when you look at these individual affiance, there's still that complete lack of allegations that would allow them to be found newly discovered. I understand. I mean, they still, I totally agree with you that it has to be newly discovered evidence. What I don't understand is how it could have to be a newly discovered fact. I think part of it, I believe that what the, if my understanding of the case law is correct is because newly discovered evidence, you know, there's the due diligence requirement, but there's also the requirement that it was a fact that was clearly not discovered after trial. That, you know, I think some cases have found that that is just positive, and that alone allows for finding that the evidence isn't newly discovered. There's nothing new that Petitioner is coming up with. Because the fact that this is a self-defense was known to the defendant at the time of the plea. I would distinguish not necessarily like the conclusion, you know, his intense self-defense, but here in this case the fact that a gun was pulled on him first. That's what I would emphasize as that fact. You want to talk about why it's not conclusive? Yes, Your Honor. So these affidavits, none of them can be conclusive because they don't state facts that could even conceivably allow the defendant to find the affirmative defense of self-defense. When you consider then alongside the factual basis evidence in which, you know, Harry walks up and shoots Petitioner, Reginald, the victim, his deposition statements are, of course, in line with that as well. There's just no way that enough has been said to indicate... You have the victim saying I was the victim and then you have other witnesses saying no you weren't, you pulled the gun first. You don't think that would support, make it very difficult to convict? I think that goes more to maybe the material and non-cumulative problem because it does add to what the jury would have heard because now there's a dispute and that's why the people conceded that problem. But they wouldn't have heard that he drove from Danville with the firearm. I think that's correct. I think the... And that would have made a difference, wouldn't you agree? I'm not sure how the... Or might have. I'm not sure how the drive would factor in to whether the essential elements were shown of self-defense because the people's position is that not even the claims pulling up the gun, the victim's claim pulling on the gun is enough on its own because he doesn't say that well-retinaled, or I'm sorry, petitioner was a quicker draw and pulled his own gun and shot him first. If that were the case, there's one incident, there's one shooting and we would be conceding the conclusive wrong because there's nothing further that kind of muddies the waters. Whereas here, you have a tussle. Each of these affidavits just refers to a tussle. The people aren't disputing that the petitioner had a right to charge and disarm the person who's pointing a gun at him. The problem is that these affidavits can't tell us anything, don't purport to tell us anything about what happened in that tussle. There's a victim pulled his gun from his back area and petitioner charged at him, dot, dot, dot, shot went off. If a jury heard that, especially comparing to the factual basis evidence, which of course says something completely different, they would want to know, okay, what happened in that dot, dot, dot period. These affidavits would reply, I don't really know and that's all I could see. I couldn't tell you, okay, well how long did the tussle go on? Well, it was either a few seconds or 30 to 40 seconds. Of course, a few being what Tiffany's claim is and 30 to 40 being what McClellan's claim is. The jury wouldn't say, you know, well, how about 90? They would say, that's it, I don't know how I'm supposed to find you know, a affirmative defense based on that. But it's not just positive enough because it's not clear what happened in the tussle. Correct. Even if the jury were to believe that the victim was the one who pulled the gun and that Rayvon Wilson charged him to disarm him from the gun.  And so, I would also note that you know, there's at that point, you know, we don't even have facts that are, because there's no claim, there's no facts that are capable of objective or independent corroboration. You know, McClinton in particular says, that's all I could see. I don't, I don't even know what, I couldn't tell you like, the gun, anything further about the gun. It happened so fast. So, these witnesses are also boxing themselves in. So, I think it's worth noting that even an evidentiary hearing wouldn't uncover anything more because they've already purported to be you know, presenting all that they know. Of course, Andre says, you know, he ducked down, he hid, and when he heard gunshots he didn't see anything. And then when he got back up, um, he, he saw Reginald, the victim, lying on the ground. Um, so that's, I think that's an easier one. Um, but even with, um, Harry and McClinton and Tiffany, they all say, shots went off. It's all this passive voice that I, it doesn't add up to, uh, any basis, uh, for finding, um, that the, um, a court that wanted to go and find the self, the six self-defense elements could do so.  I, I think, um, especially because of that, uh, tussle, um, there was an opportunity in those affidavits. He could have, uh, any of those affiants, uh, could have added details about that tussle, about what they saw, that would, um, allow for a conclusive, uh, character finding. Uh, but they simply don't. They, there's, there's no evidence that the details of that tussle, uh, are just not stated, and,  the people's position is that that's dispositive as a conclusive character. Well, I mean, in self-defense, only slight evidence is needed to raise the defense and then the burden shifts to the state to prove it wasn't self-defense, correct? I, I believe that was, Is this at least slight evidence of self-defense that the other person drew the gun and pointed it at you and that, from there? Well, I think, if I'm not mistaken, the, the standard,  that you're referring to is more about raising the, uh, instruction at trial. Um, whereas here, you know, there, uh, there hasn't been a, um, any kind of statement about,  why is disarming, why does that equal firing? Um, you know, there's a, again, people don't, um, dispute that, uh, you know, based on these affidavits, Petitioner was within his rights to rush and disarm, uh, or attempt to disarm,  someone who's pointing a gun at him, but the fact that they don't say what happened after that is, um, is dispositive because there's no, um, there hasn't been at least a little said about each element. Um, and, uh, I think there is, um, a case law that indicates that, uh, you know, when the essential elements of, um, all six essential elements of self-defense haven't been, uh, presented, you know, a conceivable basis for them all being, uh, findable, um, that that indicates that the conclusive character prong has not been, uh, satisfying. But once counsel is appointed, wouldn't they be able to, uh, you know, I guess, firm that up? Is a pro se litigant. And so, you know, a lot of the issues that you raise with respect to the affidavits are, you know, maybe form over substance. And so, uh, you know, shouldn't we allow them to file the successive and then, uh, in the next stage, uh, allow counsel to firm that up? And then, you know, if they're unable to do so, or the affidavits are still, you know, wanton, then at that point, you know, perhaps a dismissal would be appropriate. Um, well, I think that goes back to, uh, my point about, um, you know, these aff, like, uh, McClinton, you know, for example, he says, that's all I could see. You know, I didn't, I can't give you anything more than that. And, it would, it would be different if,  there was another affidavit here, someone that said, um, you know, I was right next to it, I saw everything, and, um, there was,  some basis, oh, well, this, there's still untapped knowledge here, and we can hash that out at an evidentiary hearing. But, I think, um, the important thing is, all of these affidavits, uh, on their face, they, indicate that there is no more knowledge,  to be gained from an evidentiary hearing. So, I don't know what, um, to what end an evidentiary hearing, uh, would serve. They would be stating,  the same things that they state in their affidavits. Well, I guess we're retreading some, some of the same ground here, but I think your, uh, opposing counsel, faces, all right, so we take, Mr. Wilson's, affidavit, as true. We take it as true, that, the victim, came to, the fight, armed. That's, different, than the proper. Different than the, the guilty plea proper. And that's, different isn't new, it's just different. Uh, if that's all you're saying, yes, that, that, and that would be,  why the state conceded the, um, material,  um, and non-cumulative problem, because, the presence of a, a conflict, um, you know, is not the same as a conflict, that, would cause the jury to, reach the, the other outcome at trial. Um, you know, there can be, evidence that's a little different, uh, allegations that are, are, you know, maybe can't coexist, with the factual basis evidence, but that doesn't necessarily mean that they rise to the level of being conclusive.  oh. Uh, so, I suppose, um, if, the people would, um, just reiterate, for all these reasons, and, uh, for those stated in our brief, um, that we ask this court to, uh, affirm the denial of, the trial court's leave to file, um, of the successive post-conviction condition. Thank you. Thank you, counsel. Uh, initially, I just want to respond to a couple of procedural points, that were addressed during counsel's argument. Uh, this court asked if there's a harder standard, because he pled guilty, uh, in terms of, uh, post-conviction petition, at the leave to file stage. And, there is not a difference at the leave to file stage. That, difference comes later, according to Reed, and Griffin, and Robinson. Um, at, at that point, some of, he may have a higher, bar, because of the fact he did plead guilty, but it isn't relevant at this stage. Uh, additionally, I'm not sure if the state is, abandoning its forfeiture argument, or not, but I just wanted to remind this court of its, decision in Mendoza, where it rejected the forfeiture argument. Uh, with respect to none of, uh, these affidavits being, newly discovered, uh, counsel argues that, there, are not sufficient facts set forth, from which this court can, conclude that, due diligence would not have uncovered them. Harry Wilson didn't want to testify, in a way that would, implicate himself. So he was essentially, asserting a Fifth Amendment right. And, there are cases that say that, that is a legitimate reason, and that, in those situations, a defendant will not be, considered, responsible for, failing to discover that evidence. It was not available to him. Even if it was known to the witness, and to the defendant himself, what that witness saw, if he is not, willing to testify to that manner, is considered not available, to a defendant, and no amount of due diligence, could have discovered it. Uh, and, there are a couple cases, Ortiz is one of those, where, they look to the fact that the witness, was afraid, to come forward, and, the fact that the witness, was not in an area of the park, when he observed the shooting, that, the defendant would have been aware of. And that's really the situation we have, with respect to, Mr. McClinton. He was in a barbershop across the street, he wasn't, afraid to come forward, but he was unwilling to do so, and would not insert himself into the proceedings. Nobody, it isn't clear that the police talked to him, or that anybody knew he was a witness, and he only recently came forward. So, because Mr. Wilson wasn't, aware of his, existence, or that he saw this fight, And the case you rely on for that is Ortiz?  and, you know, Griffin also, which this court, decided, also is relevant, because, one of the witnesses in that case, that provided an affidavit, didn't specifically say, I saw the shooting, but they said, I saw the, I saw, this person who, I'm saying shot this, this individual, beforehand with a gun, and I saw him afterwards with a gun. And so the inference there, is that, that witness, would be able to testify in a way, that, would support defendant's claim of actual innocence, but that is for a later proceeding, these kinds of missing details. The state can, Before you get to the missing details, what I'm, I'm trying to figure out is,  where, what is the standard, of,  investigation, that a defendant needs to show they made, of, witnesses, I'm not talking about witnesses they know about, that the member of rights are witnesses, they know about, who won't testify, but what is your obligation, in order to show due diligence, that you, look for witnesses, that you try to get witnesses, I think that, And did you say Ortiz and Griffin speak to that, or what's the case? Yes, I do think that Ortiz and Griffin, speak to that, and, there may be another case that I cited in my brief, but at this, Harper is another one where, somebody felt threatened by a police, by police officers not to testify, but, as far as what due diligence is, the defendant needs to make, an effort to discover that evidence, if he knows of the evidence, he says there were three witnesses, who he gave the names of to his attorney, and so he did, exercise some due diligence however, none of those witnesses attached affidavits, the point is this was prior to trial, and we have to acknowledge the fact that, the record is going to be different, and the amount of diligence, a defendant and his attorney are going to put into, developing a defense is going to be different, when the strategy is to enter a guilty plea to avoid the death penalty, so, I think that, you need to hear, I think that both, McClinton and Wilson explain why they would not have come forward sooner, and that, with respect to these two witnesses, Mr. Wilson, exercised due diligence to the extent that he could have, he could not have forced Harry Wilson to change his testimony, he decided to plead guilty, and again there are many reasons, why a defendant does make that decision, and innocence isn't one of them, sometimes there are other strategic reasons, as the court recognizes and read, so we don't have a fully developed record here, but these kinds of questions are for a later time, and that also goes, with respect to counsel's argument, that these affidavits are not conclusive, and he nitpicks details about what they said, or what they didn't say in these affidavits, this is a pro se defendant, doing this petition from jail, and these are individuals who are, putting forth facts which they believe will be helpful, but they aren't lawyers, and there's no lawyer counseling them, so the reference to a tussle, or a struggle, and not saying what they didn't say, I didn't see him shoot, I didn't see this, the state doesn't contest that Mr. Wilson, in this scenario where Bradley pulls out a gun, has the right to defend himself, he's arguing, oh well he had the right to disarm him, but he didn't have the right to shoot him, these are issues for a later time, at this point what Robinson says, is do the facts asserted in this affidavit, undermine the confidence, and the factual correctness of the verdict entered on the plea, and yes, they absolutely do, here is, sorry, a little water, there are certainly enough facts in here, that change the theory of what happened, at the time the guilty plea was entered, any other details about what the witnesses saw, or didn't see, that's for a later time, he says in the affidavits, oh well this witness says I couldn't see anything, Harry Wilson has absolutely no limitations on what he saw, he saw Bradley pull out a gun, he saw a struggle, and then he saw Bradley on the ground, and he saw Mr. Wilson running away, of course just as in Griffin, the inferences he saw the shooting, and what exactly he saw, and what happened, is an issue for a later time, at this point he has certainly alleged enough detail, that this court can grant, can decide that there should be granted leave to file a petition, allow him counsel to help shape these pleadings, and then proceed to an evidentiary hearing, where we can look at the strength of the evidence of self-defense, versus the evidence of the strength of the state's case, because to be clear, you first have to get passed a motion to dismiss, correct, at the second stage he would be appointed an attorney, at that point the attorney could file an amended petition, with more detail, the state would file an answer, or a motion to dismiss, and a finding could be made that you hadn't made the substantial showing, correct, absolutely, and if there was a finding that he had made the substantial showing, then this proceeds to a third stage evidentiary hearing, where we can address credibility and things like that, but right now it's just too early to say, Harry Wilson changing his testimony alone is enough for this court to say, okay, this calls into question what happened at the time he entered the guilty plea, this is totally different, and we're going to take a look at this case, so that is what we're asking this court to do, reverse the circuit court's denial of leave to file, and remand it for additional proceedings. Anything else? Thank you. Thank you. Thank you both. Very interesting case. We will take this under advisement, and you will hear from us shortly.